Good morning, Judge Berzon, Judge Thompson, and Judge Smith. May it please the Court. I am James Hennifer. I represent the plaintiffs in this matter, Rebecca Proctor and others. I would like to reserve five minutes after my initial statements to the Court. I'm sorry, I didn't get your name. James Hennifer. James Hennifer. Okay, I got you. Representing the plaintiffs, Rebecca Proctor and others, Your Honor. I'd like to try to accomplish three things in my opening statement. First, to put this case in perspective. It is procedurally rather complicated and involves several courts at Delaware. I really think you can assume that we know. Okay. It's not worth it given the time we have. Okay. Two to just how did this happen that we are in this situation and why the district court order should not stand. In terms of perspective in this case, this case is really about whether the defendant, Vishay, and the defendant, Felix Zanman, its majority shareholder, can hang on to one of the largest lootings of a corporation and excesses in compensation to an executive that we've seen until the recent one's spate of things came up. How large is this? Well, Siliconics, according to the pleadings here, lost hundreds of millions of dollars. And Felix Zanman, under the request for judicial notice that we filed with our reply brief, recently in SEC filings was found to have compensated himself with $1.25 million. Wait a minute. You're arguing a lot about merits. The first issue is standing, isn't it, whether or not the plaintiffs have standing here? Well. Am I right in that? The question here is. Removal question by Ernst and Young removed it, and you're challenging the removal, or have I got the wrong? Well, there are two issues here. One is challenging the removal. That is correct, Judge Thompson. But I'm really talking more about whether the district court, in refusing to hear arguments on whether the res judicata should apply. And you've got the injunction issue out of the Delaware court as well. That is correct, Your Honor. So you've got the removal issue, the injunction issue, and the res judicata issue. That is correct. Those are the things we're interested in, I think. That is correct, Your Honor. And on the removal issue, I'm not going to touch on that. I think it's covered in the briefs. Fine. And it's a procedural issue, and I don't think that's our strongest argument, quite frankly. So what I'm going to now is the question of whether the district court should have said, in effect, I am not going to independently evaluate the res judicata under Donovan and under the standards of the Matsushita-Epstein case. I'm simply not going to. What it said was I'm not going to entertain arguments on that unless you go back to Delaware and you litigate this in the Delaware courts, which would have meant it would have been all over. Now, under Donovan, the Supreme Court was extremely clear when it said that the question of res judicata, of a state court judgment, is for the federal court to determine. That's all the more important here because, as the district court found, SLUSA says that our case is federally preempted. That is, the 33 and 34 Securities Act totally preempted the state court proceedings. Well, either some of it. I'm sorry? Are you conceding that it preempts all of it as opposed to the SLUSA removal trigger claim? Well, Judge, there are three claims. The first two, according to the district court, were totally preempted. That is, in the Pottenaub case, this Court has said, look. Are we talking only about the claims against Ernst & Young now or everything? No. We're talking about the claims against Vishay, Felix Zamen and Ernst & Young. So since it was only the Ernst & Young amendments that led to the removal and that was SLUSA covered, I assume that's the only part of it that would be SLUSA preempted. Is that not right? Well, actually not. As I understand the judge's ruling, when the amendment to the Second Amendment amended complaint was filed, it specified that Ernst & Young and the other defendants engaged in false statements. I see. All right. But that's just still that piece. It's not whatever was in the case before that. I'm sorry? It's still that piece, not whatever was in the case before that. It's that piece, Your Honor. And there is a – those are the first two causes of action. And the third cause of action in the complaint is really a Delaware quasi-appraisal right, which is available under Delaware law in the Geliard case if the procedures weren't followed to give somebody a right to a fair appraisal of the value of their stock. So let me just understand what your position is at this point. I gather, therefore, that you're not – you don't want to litigate the question of whether you're – the two causes of action are SLUSA preempted entirely, even if – We're taking that as a given, Your Honor, because the defendants argued that at the district court, that they were totally preempted. Right. And it's our position here that under SLUSA, and as this Court has said in Potnot and other cases, once you're in the federal court, you're entitled to the federal law, you're entitled to federal procedures. It was designed, SLUSA, to prevent exactly what happened here, that is, somebody going into a state court like Delaware, going in under a tender offer, freeze-out merger, which has been heavily criticized by all the legal scholars, and for $30 million and a million dollars in attorney's fees, getting a clean bill of health, a raised judicata that would prevent any other litigation in the United States so their chief executive officer can be – Why does SLUSA help that? Well, it helps it in this way, Your Honor. In order for raised judicata to apply, you have to have an identity of claims. It's clear, and the judge found, that the Delaware action in Delaware Chancery Court was what they call a Delaware carve-out. It was not subject to SLUSA, not subject to federal securities laws, not subject to the safety of the federal courts, the federal procedure, and the federal securities laws. And where we are now is that once that's been found, and the defendants argued that successfully, in order to get the removal, they're stuck with it. Let me ask you a couple of questions. Yes, Judge Smith. It's my understanding that what you're really suggesting is the district court did not make a raised judicata finding. Is that what you're arguing? Exactly. That's correct. All right. So you're arguing that. I guess I'm now looking at a couple other things. It seems to me that the only claim that there would be left in this particular matter based on standing is your claim for additional consideration for shares on account of the tender offer. Well, that is the Delaware claim, the third cause of action. That is correct. Well, but my worry is that how does your client pursue derivative claims? Well, they would have direct action. Everybody's agreeing. The direct action is the claim for additional consideration for the shares on account of the tender offer. But I'm trying to figure out what other claims there would be that you would have standing to even bring. Well, the continuous ownership requirement is an interesting one. Of course, in the California Supreme Court, under California law, has made that a requirement, the Gossett case, which was recently decided. But under federal law, under the Federal Civil Rules of Procedure 23.1 in the Kona Bishop case, where there has been a fraud that took your shares away from you, then continuous ownership is waived as an equitable revenue. Well, I don't know whether that's exactly what Kona says. I read Kona, and there are two exceptions Kona talks about, and I don't think the first one is applicable. But the second one is about a merger. And it seems to me that our court said there has been no merger in Kona. They don't fit this exception because the companies still exist. There is still stock ownership of the, if you will, the subsidiary corporation, and therefore you don't meet the merger exception. I mean, Kona had the same kind of a case you have. They were given parental shares in a merger-type situation and were battled out, and then they wanted to come in and fit an exception under Kona in order to have a derivative claim, and our court said you can't have it. The corporation that you're merged out of, that you don't have any shares in, still exists, still has stockholders, so you don't have a claim. Well, here the corporation that Rebecca Proctor was merged out of is, of course, Siliconics. It has no shares. It's gone out of existence. Well, as I understand it, after the particular situation here that Siliconics still had shares, it was just owned by its parent, same as in Kona. Well, our client does not have shares in Siliconics. Your client doesn't, but the company exists. Actually, it was merged with a holding company in Delaware. It's not a real company. It is, you know, for all intents and purposes, our clients have Vishay shares. It's merged into Vishay, and Vishay, as of today, because of Mr. Zandman's $1.25 billion compensation to himself, is worthless. My client, Rebecca Proctor, can't send her daughter to college because her investment is wiped out. So you're suggesting that Vishay doesn't own these shares at this point? My understanding is the two companies have been totally merged. The operations are merged. They file a single statement. They do a single set of operations. A single statement, but they can be subsidiaries and wholly owned and file that. This is not a wholly owned subsidiary, Your Honor. It's now called Vishay. Siliconics is, for all intents and purposes, and for practical purposes of our clients, gone. Let me ask you a second question. How do I maintain your claim against Ernst & Young, given 15 U.S.C. 78 BBF1? That's BBF1? That's the one that says the class action claim against Ernst & Young. It seems to me that I have to dismiss. I dismiss without prejudice for you to be able to do whatever you need to do in the lower court, in the State court, but I can't maintain that claim in Federal court. Is this SLUSA? Yes. Yes, it is. It's my understanding, Your Honor, that the ruling of the district court was that the Ernst & Young claims were totally preempted by SLUSA and were Federal claims, and that we cannot maintain that in State court. Am I correct on that? Yes. Am I with you? Yes. As I understand it, the whole point of this exercise at this point is that you want to amend your complaint to allege Federal causes of action. Is that basically where we are? That is a fair statement. So the answer to Smith's question is yes, that goes out. Yes. The State claim goes out, but without prejudice. Right. But you – but rather than dismissing the case, you want to amend it to the complaint to provide for Federal securities causes of action. Right. And to proceed on those, which are obviously much broader in the sense and have the to go to – leaving aside the standing issues for the moment, what do you do with Matsushita, if that's how you say it, or Matsushita? Because then the case turns into Matsushita, right? Yes. I'm sorry, what? Well, I had that problem with Justice Rehnquist when I argued the Kodak case up at the Supreme Court. Right. He said Matsushita, and the Japanese tell me Matsushita. Matsushita. Okay. I'm sorry. Let's say it's Matsushita. Essentially, this case turns into that largely with one major exception, because essentially what you're going to want to do, the only reason this case would live would be that you would allege Federal exclusive security causes of action, as in Matsushita. Right. And it's an interesting thing. The Matsushita-Epstein case was decided before SLUSA was enacted. Now, court hasn't considered what the effect of SLUSA is on the Matsushita-Epstein case. Now, of course, there was a lot of controversy over at the end of court over whether you wrotely applied a State court class action judgment as raised judicata, or whether you looked at whether it was done with full disclosure. This is the one thing I wanted to point out. The one major difference that I can see is that there was an opt-out in Matsushita and there's no opt-out here. Now, does that matter? Yeah, I think it does, Your Honor. I think one of the safeguards that one gets in Federal courts is, of course, an opt-out, but we also have other safeguards that were not, at least in our view, given in the overall zeitgeist of the thing. In Matsushita, part of what they were saying was these people could have opted out of the State cause of action, and they didn't. So therefore, we're going to hold them to the State raised judicata law even if it ends up precluding a Federal cause of action they couldn't have brought in State court. But they kept repeating the fact that there was an opt-out. Here, there was no opt-out. The allegations of the complaint deemed true here, and which were not refuted in the Rule 56 motion, one of the two motions, there was a Rule 12 and a Rule 56 motion pending before the district court, is that they were not given adequate notice, not given the opportunity to opt-out. And when they did opt-out, they're not going to be able to do that. But there was no opt-out. I mean, there wouldn't be an opt-out. It's not only that there was a screw-up. As I understand it, under Delaware law, there is no opt-out. There is no opt-out on the freeze-out. That's correct. Exactly right. That's why a lot of the legal scholars, I mean, Columbia, Harvard, Yale, have criticized this. It – there's no overall fairness standard. You're frozen out. You're given the shares whether you like it or not. You can't opt-out of that. And that is a difference. Well, you can't opt-out of that, but you also can't opt-out of the lawsuit in Delaware that precluded – is now going to preclude this case, even though you couldn't have litigated these issues, this cause of action here. One other question. I'm sorry. What – I gather that there – that the overlap between – that there is not a complete overlap between the – the individuals in the cause – class in Delaware and the class in this lawsuit, and – although the named plaintiffs are in both. So what's the significance of that? I mean, could some of the plaintiffs here nonetheless – in the class clearly go forward because they're not enjoined and they're not covered? Even if your – your direct named clients are? Well, it's true that some of the class here, Your Honor, is not directly overlapping with the one in Delaware. Some of them have sold stocks. Some of them – and that was something the district court had trouble with. They said, well, look, you know, this suit in California started in 2002, and people holding Siliconic stock between 2002 and 2005 are members of that class for this lawsuit.   And that's not to say that we're not going to be able to proceed with this lawsuit when there's a bias precluding and diminishing the value of it. So does that mean that no matter what happens to this appeal, there is a group of people who are going to be able to go forward with this lawsuit on their own behalf? They may have to either start over again or intervene or become named plaintiffs, but they can't be precluded even under the judgment of the district court. Is that right or wrong? That's our view. Yes. Okay. You can have some time. Okay. Thank you very much. Good morning. Your Honors, may it please the Court. Bruce Cormier here on behalf of Ernst & Young. In my five minutes, I had planned to spend most of it devoted to the removal issue. But I don't want you to be arguing bad at that anymore. You should talk about something else. And I will do that. Let me ask you one question about this removal, which is of some worry to me. And I appreciate that counsel didn't say anything about it. But this has to do with we have a case that suggests that all the defendants must join in the removal. Or consent to the removal, Your Honor. Well, in my book, I read Hewitt and I understand what it says. In this particular case, we had one who wanted to file a notice of removal and another defendant who did not file, did nothing until September the 16th, 2006, which was much later than would be. What do we do? There's a new act about class actions that is 28 U.S.C. 1453B, effective in 2005, that says the defendant can remove the action without the consent of the other parties. But it specifically exempts claims concerning securities. And or that relate to the internal affairs of the governance of the corporation. Or the form of the business enterprise. Or that relate to the rights or duties, including fiduciary duties. That particular act, which is the new act enacted by the Congress, suggests that, yes, while there might be something that could be said about our case in Perino, that unless it has to do with something other than securities, one must have the consent of the other parties. Which says to me that the rule is pretty important. You can't distinguish. Your Honor, that I believe is CAFA and it explicitly carves out cases under the Federal Securities Laws, the 33 Act and the 34 Act. This is how I analyze this circuit's precedents. Well, but, and I guess you tell me once again, and maybe I've misjudged CAFA, but it's my understanding that CAFA said that the defendant can remove without the consent of the other parties. That's correct. But then it specifically exempted claims against securities. There has been no argument. Exactly. And there's no doubt here that there is a Supreme Court rule that's 100 years old that requires unanimity on the part of all the defendants. The question is what is what has to be expressed in terms of the unanimity, in terms of consent? It's a procedural question about whether it's sufficient to say. That's right, Your Honor. And I would have. Everybody consents or whether there needs to be a separate piece of paper. That is correct, Your Honor. There's a difference between consent to removal and removing yourself. That is exactly right. And 1446a is silent in terms of how that consent needs to be expressed. Indeed, it doesn't even in and of itself impose a unanimity requirement, although I acknowledge it exists. I think it's an open question in this circuit as to how that consent needs to be expressed. And I would urge this Court to follow the court in Harper v. Auto Alliance, the Sixth Circuit case, which says that precisely what was done in this particular instance, which is simply to indicate that all defendants consented, is sufficient. Now, there is no doubt in this case that all defendants consented. Beyond that, the cases that require everyone to join in writing simultaneously with all due respect don't appear to have much reasoning behind them. Don't what? Well, they don't have any reasoning behind them because the suggestion is that these are uncertain. That is correct. And that would include Judge Easterbrook's decision, Your Honor. I mean, there is an indication that these defendants need to be bound, and the implicit suggestion is defendants will game the system so that, for example, if Mr. Wagner doesn't like what's happening in the Federal district court, then maybe he'll say, well, I didn't do it after all. But once he has noticed, if somebody gets a piece of paper saying all defendants consent and you're a defendant who's been represented as consenting and you don't say anything after that, it says to me you're bound. That is exactly right. 1447C requires remand petitions to be made within 30 days. So there is no way that Mr. Wagner or any other nonmoving party could game the system. There is no prejudice to anyone. And if I as counsel misrepresent under Rule 11 that everyone has consented, a remand is going to be the least of my problems. So I think that this Court ought to follow the rule in Harper. I also feel obligated in my remaining time to clarify the situation with respect to Ernst & Young, because it's plain to me that wholly apart from race-judicata grounds, there are no claims left here. It should be made clear that the third cause of action for quasi-appraisal was withdrawn by plaintiff in the same pleading that created the basis for Federal jurisdiction. I refer the Court to ER 1151-1152, that is, paragraph 53 of the amendment to the second amended complaint. The assertion is made, plaintiffs hereby state that they are not pursuing the third cause of action in the second amended complaint for cause of action for quasi-appraisal against Defendant Ernst & Young. So that's the third claim. It's gone. The second claim, which is preempted by SLUSA, is gone. There is absolutely no doubt that the Federal district court in those circumstances accepts removal of that claim and dismisses it. But his – as I understand it, as I said before, everybody understands that, but really what the game here is, is are they going to be able to amend to assert Federal security's causes of action? Your Honor, I would say this, that it – I think these plaintiffs were bound by race-judicata because all of them were in the class. That's a different issue. Somebody wants to come in and attempt to plead a Rule 10b-5 claim where another claim under the Federal security's laws, based on those transactions, I don't see anything that would preclude them. I would say that they would – sorry, Your Honor. You're – you were representing that with regard to Ernst & Young and these current plaintiffs, because it's SLUSA preempted, that's the end of the story. That isn't the end of the story, because they are claiming – absent a race-judicata decision. So you have to get – you have to get to the race-judicata issue. What I'm saying, Your Honor, I think that's – what I'm saying is these plaintiffs – for these plaintiffs, on this day, it's the end of the story. If another plaintiff wants to come forward. Not if the district judge was incorrect in concluding, in dismissing, not because of SLUSA, but because of the injunction in Delaware. Your Honor, is – is I – I think that it would be within the discretion of the court at that point to entertain a motion to amend the pleadings to add a Federal security's law claim. So it may not be the end of the day. But not – not unless we reverse the district court. Because the district court has, as I understand it, never really decided the SLUSA question, and never really decided – instead, he dismissed the case on – you can correct me if I'm wrong – on the ground, although you've been representing that it was on race-judicata grounds, it doesn't read like race-judicata grounds. He said it was – he was dismissing it on comedy grounds. Don't worry about your time. We'll deal with the time. He was dismissing it on – on what he called comedy grounds because of the injunction in Delaware. And unless we reverse that, this case isn't going anywhere. So you haven't addressed that at all. It seems to me, even on your own theory of what's going on here, necessary to address. Gershengorn Well, I would say that there – that the SLUSA preemption was urged as an independent ground for affirmance. Kagan Okay. But if we were to affirm it only on the SLUSA ground, it would be without prejudice and it would go back and it would be a different – so we would be reversing the district court. We still have to reach the question that the district court decided and Donovan and all that, which nobody has addressed yet. Gershengorn I will address that. Kagan Okay. Gershengorn And Mr. Wagner will address that. Kagan All right. Gershengorn But maybe I'm being hyper-technical here. This claim, as it's presently constituted, is a claim under State law. It is a Federal securities law claim in disguise, but it's a claim under State law. Kagan That is true. Gershengorn There's no doubt that needs to be dismissed with prejudice, Your Honor. Kagan Why? Gershengorn Because it is preempted. Kagan It's preempted. But all right. So that – but the case doesn't need to be dismissed with prejudice unless the district court is right. Gershengorn That's correct. And what I'm attempting to explain to you, all I was attempting to do here is to explain that wholly apart from the race judicata issue, there are independent grounds to affirm on behalf of E&Y. The third claim is in the rough. Kagan Well, because you wouldn't affirm them. You'd reverse because he – to allow amendments. Gershengorn Your Honor, I think that it might be open to the plaintiff to add – to seek to add a Federal claim. Kagan Uh-huh. So that's a different disposition and it's not an affirmance. Gershengorn But I also think that it would be open – but I think there's no doubt that that State claim would need to be reversed.  Kagan Affirm. The State claim. Gershengorn Right. The State claim. I'm talking about the State claim. I'm just talking about affirmance of the district court's order as to the State claim, but then when it goes back, if it does on the other claim, he could add Federal claims if he wants to the district court. Gershengorn That is correct. And to conclude this chapter, I will finally add that under Rule 23.1, whether you look at this as a matter of Delaware law or California law or Rule 23.1, the continuous ownership requirement is applicable. So that takes care of the first cause of action, which is the derivative claim. Kagan But not the second one. Gershengorn But not the second one. Scalia Not the claim for additional consideration for their shares on account of the tender offer. Gershengorn Yeah, but E&Y is not even mentioned in that. Scalia I understand that. Gershengorn Okay. Kagan Okay. Thank you very much. Gershengorn Thank you, Your Honor. Kagan All right. We'll give you, say, 9 minutes. How's that? Okay. I hope that will be fine. Let me just clear up, before I get to res judicata, which hasn't been addressed so much, let me just clear up a couple of points. First, Mr. Cormier, and I think Your Honor is correct, that the derivative claim is clearly, should be dismissed, even before res judicata, because siliconics hasn't existed for four years. It doesn't exist anymore. Any claim would violate the continuous ownership rule. Kagan But if it doesn't exist, why doesn't that lead to the CONA merger exception? Because there's no allegation in this complaint that the merger was, in effect, the same fraudulent conduct that was alleged, that's been alleged here. And for that, all you have to do is look at the amended complaint, which makes clear that since 2001, Vishay was trying to effect a tender offer. So based on the allegations in the complaint, that exception doesn't apply. Second, with respect to Your Honor's question about a carve-out or an opt-out, there was, in effect, an opt-out. If you look in the record on the scheduling order issued by Vice Chancellor Strine in the Court of Chancery, any plaintiff had the, any shareholder had the opportunity to object to this. That's quite different than opting out. Okay. And there was no opt-out. Am I wrong about that? Well, yes, because, well, let me describe what there is. There's a right of appraisal. That is, in effect, an opt-out. And Delaware has a procedure under Section 262 to get fair value for your shares if you object. But it's not an opt-out, because it's not an agreement to go along with a settlement that you didn't agree to, as opposed to litigate the case separately. But it gives you the right to get a different value for your shares. But not by going to court and raising your own causes of action. And every we have lots of sentences running around in Richards and other Supreme Court cases about everybody has a right to the day in court, and this doesn't provide that. No, I think it does, because what the, what Section 262 says is that if you object within 20 days and then you file a complaint in the Delaware court of chancery within 120 days, you get your day in court. But what if I don't want to be in the Delaware court of chancery? What if I want to be in California? It's unclear. I think it's unclear whether you can bring a quasi, an appraisal or quasi-appraisal action elsewhere. But if I have a different cause of action, as here they have much, I mean, one strange dynamic here is that the parties keep switching positions depending on what's useful about the fact that the, this case was brought in 2002 and involves a much broader set of allegations than the other one. And on the one hand, so they want to litigate a somewhat differently constructed case. And they have no way to do that. On your theory of the situation. Well, I believe, first of all, because they haven't properly followed the appraisal statute, that they don't get their day in court. And there's really no dispute about that. You know, they didn't follow their case within the appropriate time. They object to the, their claim on quasi-appraisal is they object to the notice. The plaintiffs in Delaware blessed that notice. And Vice Chancellor Strine, in his judgment and release, released all claims concerning that notice. So the only claim they would have left is a claim that they didn't receive notice. And in response to the summary judgment motion with his evidence in the record that everybody did get notice. Let me clarify something. Could they bring a case in, first of all, they don't want to go to Delaware. But could they bring a case in Delaware that goes back to 2002 and says that since 2002, this, that and the other thing happened, which resulted in milking the corporation and breaches of fiduciary duty and so on. Is that what they can litigate in Delaware? They cannot litigate that. They can litigate the. Exactly. They could have litigated the value of their shares. Exactly. So they can't bring this case in Delaware. Well, they could have brought in all of that, all of those claims and litigated in the context of quasi-appraisals. Yes, they could have had they followed the appraisal statute in Delaware. There's no dispute. Let's talk about ratio to cot and comedy in the injunctions. Okay. And let me, let me try to clarify because this is a little bit like law school civil procedure. And we still seem to get it wrong. But the issue is whether the judgment issued by the court of chancery, the release and the settlement issued in October 2005, is entitled to race judicata effect. That's the issue, but it isn't what the district court decided. Let me get to that. The district court, I think, probably didn't use the most artful language in the world. But I think what the district court was saying was we have to respect the Delaware judgment, and we also have to respect the decision by the court of chancery as well as the Delaware Supreme Court, both of which have held that the claims brought here fall within the judgment. And I think if you look at the transcript on page 723 of the hearing, he clearly says, Judge Fogle clearly says that this case brought here falls within the case that was passed in Delaware. And I admit that it's not the most artful language in the world, but I think what the judge was saying was I have to respect the judgment, and I have to respect the decisions by the court of chancery and the Delaware Supreme Court. But that doesn't, just because you're going to respect the decisions, I mean, I read this decision, and my colleagues write on about that. My worry is if you're going to give a race judicata effect to what happened in Delaware, which I think is the only way the federal court is bound by it at all, is to give a race judicata effect rather than a comedy effect, they've got to go through a race judicata analysis. I did not see right to the part in the transcript which gives me the race judicata analysis for the claims brought by the shareholders. If you look at 1723, it says this court is being asked to decide whether some or all claims were brought in Delaware. Well, but, I mean, you can point to language, counsel, but if I were going to give a race judicata effect, I'd say, okay, here's the claims brought in Delaware, here's the parties that brought the claims in Delaware, here's what it is that they brought, and now we have it in California, it's the same. So I've got to give a race judicata effect. I don't say, which I have had in front of me in this court already, I don't just say, well, I think for my area, this court seems to be good and we ought to give consideration to what they say, and therefore, since we give consideration and they're a good court, we're going to go fall behind them. That isn't race judicata. I agree that it's not the most artful language in the world, but I... Better off to agree that he did not make a race judicata rule. But this court is entitled to consider the issue de novo, and it's clear, based on everything in the record, that these claims are covered by the judgment in Delaware. Let's count the ways. One... I suppose the plaintiff would want to tell us what evidence or allegations he might want to make or showing he might want to make in the district court as to lack of identity of parties or lack of identity of issues. Well, he has briefed that issue, and we've briefed that issue as well, and we showed while the complaints are not word for word... Here, but the district court didn't do it, and he wants to do it down in the district court where it should have been done in the first place and considered in the first place. Well, that may be, but, again, this court is... That analysis was before the district court and it's before this court, and we have parsed the claims. You do have the statement by Vice Chancellor Strine that this is clearly covered. You have the statement by the Delaware Supreme Court. I don't really... Generally speaking, race judicata is a determination by the second court as to the preclusive effect of the case of the first court. According to the law of the first court, but by the second court. That's right. So I don't understand that the opinion of the first court as to the preclusive effect of its own judgment is worth a whole lot. Well, I'll tell you why I think it is worth a whole lot. Because the issue of whether race judicata applies, whether this judgment applies, has been actually litigated and necessarily determined in... Have you ever seen that work, i.e., a situation in which a second court is precluded by the race judicata determination of the first court that issued the first judgment instead of having to make that determination itself? You're basically cutting out the dynamic that I described, and you're saying that the first court's opinion as to the preclusive effect of its own judgment is preclusive on the second court. That's your argument? To some extent, yes. But I think that only makes my point clearer because the... Have you ever seen a case that operated that way? No, I haven't. I have not seen a case that operated. But, again, I think it only makes my... makes Viché's motion stronger because you have the author of the opinion. There's absolutely no uncertainty. He wrote the judgment, and he is saying, I meant to cover Procter, and I am covering Procter. What could be clearer than that? Another question. In this instance, the Delaware case was brought under the Delaware carve-out to Slusa, right? Well, in effect, yes. So it can only be that broad because if it were broader than that, i.e., if it was like the Procter case, you would say it was precluded by Slusa. Yes. All right. Yes. So how can that case preclude a cause of action that wouldn't have been allowed to be brought there because it would have been precluded by Slusa? Well, I think here what you have to do is separate the claims against E&Y and the claims against Viché. The only claims that were preempted by Slusa, I think, were the claims brought by E&Y. We were simply a pendant claim, and under 1441C, we traveled with them. So I don't think there's any disconnect here. But even if there were some disconnect, there's no dispute under Matsushita that a release in Delaware can be broader than the actual claims brought there. A release in Delaware can release Federal claims as well. So I think that there's not an inconsistency there. But the problem comes, I guess, when you talk about their release, because I anticipated your answer. The problem comes that if we're really talking about the release and what release was supposed to be and whether we give a res judicata, we ought to have a hearing and we ought to have some idea about what it is that really happened in Delaware and what it is that didn't happen in Delaware. And if we don't have that by the second court as to determine this, because these people are litigating in California, they're not litigating in Delaware necessarily, we haven't come to the point we need to come to. We might even accept evidence. That's why this Court is not in a good place for a de novo review to make this determination. Wouldn't you agree? I would respectfully disagree, again, for two reasons. One, it's, again, this is unusual, but we have the highest court in Delaware saying    I don't think it's accurate, either. I mean, isn't it true that the highest court in Delaware dismissed the case because the litigant didn't have standing? They did, but they also made factual observations. How much are factual observations in a case that then there was no jurisdiction over? So they're not worth a lot. Right. But, in effect, you'd have to be ignoring what the Delaware Supreme Court said and what, again, I come back to this point, Vice Chancellor Strine, who's probably the leading jurist with respect to corporate law at the state level in the country, he made absolutely clear that his judgment meant to cover this. There's no ambiguity. And that's why I would say a hearing is not necessary. Do you deal with any allegations that the representation in Delaware was inadequate? Which representation? The representation of the class in Delaware. Let's just assume that that's one thing that the plaintiffs would want to claim here. We have a class complaint here, and there are various the race should have got effect of a class action is complicated. There's also the fact of the lack of overlap, the complete overlap of the classes. But they no, but there's no claim that can be there's no claim that can be brought by Mr. Hennifer's clients that wouldn't be covered in Delaware because they needed to be they needed to have they needed to be owners at the time the case was commenced and you were and at that point you were clearly you clearly fell within the class in Delaware. All right. What about the other people who are in this class or not were not owners at the time the case commenced? Then they don't have a derivative claim. They have no standoff. Right. But they may have the other claim. They may have. But it's I mean, this dates back five or six years. It would be time barred and they. It would be time barred even though there were members of this class. No, it wouldn't be. Well, if they're federal securities claims, I think they probably wouldn't be because they'd be they'd be a stopper for the time period. I mean, that's class action law. They wouldn't be. They could bring the class action. Well, it's possible. Let me just go back to. All I'm trying to demonstrate is that it's complicated. It's not that straightforward. It's complicated. But there's a procedure in Delaware that's designed to avoid complications. And if Ms. I can't deal with any of these problems. But they had the opportunity to come in. They had notice about the settlement hearing in Delaware. They could have come in and say carve out our case. They can't sit back and hang in California. There's no dispute they knew about. As a matter of fact, the timing of their amendment was specifically key. It was specifically key to the settlement hearing in Delaware. So they knew. They absolutely knew. And what's going on here is they hung back. They said, oh, let's not go into Delaware and object, which is really what they should have done. They said, let's keep our case apart. Maybe we can pretend it's not covered. That's an element of gamesmanship that class action settlements are designed to avoid and that this Court should not countenance. Well, that's a decision that should be made by the district court in the first instance, isn't it? Yes, I believe it should. But we're presented with what you've got. And I believe, again, you can consider the issue de novo. And, again, given the statements by Vice Chancellor Strine and given the statements by the Delaware Supreme Court, and, in fact, if you look at Page 6 of Mr. Hennifer's brief, it's either Page 6 or Page 9, he in effect admits that the judgment purported to release the claims here. So I don't think there's any dispute. I don't think Mr. Hennifer, at least based on that admission in his papers, I believe it's Page 9, the Delaware judgment purported to release all claims of the minority shareholders, including their claims under California law, pending in this action. So he's admitted it. He just doesn't like it. And maybe if I were in his shoes, I wouldn't like it either. But that's the way we adjudicate class actions, and it's for judicial efficiency purposes. It's very complicated. Thank you very much. I'm sorry for the complications. Thank you very much. I'll give you about two minutes. It always gets more complicated when you get to the argument at the court of appeals. I've been living with this case for many years, and it's still a little bit complicated. I should say, by the way, that the briefs were very good, and they really did help to pierce through the complications. I will be brief. I just have four very quick points. As gallantly as he argued it, Mr. Wagner cannot make the case that the district court decided the raised judicata issue. Judge Berzon and Judge Smith have that correctly. The court said it will not entertain arguments. Will, quote, will not entertain arguments on that. He will not entertain arguments, quote, that they are entitled to a determination in California as to whether or not the Delaware settlement bars their claims and whether the Delaware Chancery Court had jurisdiction to issue the injunction. There he says it. The district court says, I'm not even going to entertain arguments, let alone decide it. So, I mean, that's the end of that issue. The court is correct. That issue was not decided. And I think that's the end of that issue. What about the quasi-appraisal issue, whether it's been dropped or not? Well, the allegations in the complaint, Your Honor, are that it was not correctly offered, and because it isn't correctly offered, they had no opportunity to litigate it, no opportunity to determine whether the value of their shares was depressed. But the representation was that you dropped that cause of action. Well, the representation was that we dropped that cause of action as to Ernst & Young  only, and what he read said Ernst & Young only. I see. And we did drop it as to Ernst & Young. I see. Okay. That is the correct representation that he made, Your Honor. The second issue that I'd like to address very briefly is that it's difficult to see how we have an identity of issues when the Delaware claim, in order to avoid SLUSA, is part of what they call a Delaware carve-out. It's a very narrow cause of action that relates only to that specific tender offer and merger, not to events that occurred back to 2002. So there's a very different set of facts, and I think Judge Smith has it right. You're going to need a hearing on whether those facts match and whether the parties are the identical parties or in privity. We don't have that here because, of course, in Delaware, Felix Zanman was not a party. Ernst & Young was not a party. And the Court has that right, too, that the Court to determine whether there's an identity of issues here, once we have pleaded the Federal 33 and 34 Acts, is going to be the district court here. And it didn't touch that issue. It never got there. But this is the hard question, it seems to me. Matushita did not actually deal. The case of Matushita came up through the State injunctive action, not the Federal injunctive action, which dealt with the question of whether to respect the State injunctive action. And it left open the question of whether the State injunction, although invalid, was no longer – was still enforceable and – or could be enforced. And that issue really hasn't been addressed here. What I understand your opponents to be saying is, well, they should have gone to Delaware if they didn't – if the injunction covered them and they didn't like it, they should have gone to Delaware and complained about it. And that's essentially what Jeremy – what Judge Fogel said. So the question is, why isn't that the answer, that maybe it wasn't a good order, but that you had to go to Delaware and complain about it? The judge did address that. We argued at the district court at pages 14 and 15 of that transcript that the – that the district court here in California, based upon its knowledge of SLUSA and the federal laws and the federal securities laws, quote, is in a better position to give a disinterested view on the race judicata issue than the Delaware court is to review its prior rulings and say they got it wrong, close quote. And quite frankly, that was the reason we stayed here in federal court rather than go back to Delaware as invited by the district court. The district court responded, I suppose if I were on the Ninth Circuit, that would be true. Now, I took that to mean that, you know, if you were – You should have reported that to us. That didn't make us very happy. Okay. I'll close my arguments with that, Your Honor. Okay. Thank you, counsel. Thank you. Thank you, counsel, for useful arguments in a hard case. The case of Proctor v. Vishay, Intratechnology, is submitted.
judges: Thompson, Berzon, Smith